US v. Hill, et al.                          CR-99-112-M    02/11/00
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


United States of America,
        Plaintiff

        v.                                  Criminal No. 99-112-1-4-M
                                            Opinion No. 2000 DNH 039
Allister Hill; Damion Murdock;
Bobby Robinson; and Robin Goss,
        Defendants


                            **O R D E R**


        Defendant Robinson moves to exclude from evidence at trial

any testimony by DEA agents to the effect that he made self-

incriminating statements.  The government counters that defendant

was properly warned under Miranda, waived those rights by

agreeing to cooperate, voluntarily answered questions, and

incriminated himself and others.  Therefore, says the government,

defendant's statements were voluntary, made only after he

knowingly and intelligently waived his Miranda rights, and

constitute admissible evidence.  Miranda v. Arizona, 384 U.S. 436

(1966).

An evidentiary hearing was held on January 28, 2000, and supplemental memoranda and affidavits have been filed. Having considered the testimony, affidavits, and legal memoranda, the motion to exclude or suppress is granted.

The circumstances involved here are somewhat unique and go beyond typical factual disputes such as whether an oral <u>Miranda</u> waiver was given by a defendant, whether unrecorded incriminating statements were in fact made, and whether a defendant did or did not invoke his right to counsel before custodial questioning began. Although all of those issues are present here, this case also presents substantial procedural issues related to the prosecution's failure to disclose both written records memorializing statements allegedly made by defendant, and the substance of oral statements allegedly made by the defendant, "in response to interrogation by a person then known to defendant to be a government agent, that the government intends to use at trial." Fed. R. Crim. P. 16(a)(1)(A); <u>see also</u> LCrR 16.1(a)(1).

It is of course the government's burden, as a condition of admissibility, to demonstrate by a preponderance of the evidence

2

that before giving a statement during a custodial interrogation, a defendant voluntarily, knowingly, and intelligently waived his Miranda rights.  The evidence in this case, taken as a whole, is not very persuasive – indeed the figurative scales measuring relative persuasive weight probably remain close to balance. This is so because while a DEA agent testified that defendant was informed of his rights under Miranda (from a DEA form that presumably accurately recorded those rights), agreed to cooperate, and made incriminating statements, corroborating evidence is virtually absent.  For example, written waiver forms were readily available, but not used; no written statement was taken from defendant; no written or typed statement was signed by defendant; no notes were taken by any of the DEA agents during the interrogation; and, although the interrogation room prominently displayed a number of unavoidable signs disclosing that the proceedings were being videotaped by the local police department, no effort was made by the DEA to obtain and preserve a copy of that tape until a day or two before the suppression hearing.  (The interrogation was in fact videotaped.)  While none

3

of those factors is required to establish the voluntariness of defendant's alleged waiver, their absence is disquieting.

Moreover, defendant argues that he not only made no statements, but unequivocally invoked his right to counsel. See, e.g., Edwards v. Arizona, 451 U.S. 477, 484 (1981); Smith v. Illinois, 469 U.S. 91 (1984). His story is not without support. Defendant was afforded the opportunity to have a phone call made on his behalf (which the lead investigator placed and conducted from the interrogation room and in defendant's presence). The person called, Shannon Loughlin, credibly testified that the agent told her of defendant's arrest, informed her of his imminent transportation to Concord for arraignment, and advised that she might seek legal counsel for defendant. She testified that the agent was repeating what she could hear defendant saying in the background – that he needed a lawyer and that she should try to find him a lawyer. The prosecution suggests that defendant's comments, if made, were related solely to his upcoming arraignment, and were unrelated to any invocation of Miranda rights. Perhaps, but it is hardly clear.

4

It does seem an odd practice for an experienced DEA agent to pass along that kind of burdensome request when he well knows (and could have easily informed a cooperating suspect) that at arraignment his rights to counsel would be discussed and either counsel would be provided for him if he could not afford counsel, or he would be free to arrange for private counsel. And, defendant probably knew that as well, having had previous experience with the criminal justice system. Based on the evidence of record, I find that defendant did request the assistance of counsel, and the government has not proven by a preponderance of the evidence that he invoked that right in an equivocal or limited way unrelated to his interrogation, or that he knowingly, intelligently, and voluntarily waived that right before his custodial interrogation began.

In addition, the only notes taken by law enforcement officers relative to incriminating statements made by defendant were taken by Agent Houle, in his car, while he was driving defendant to Concord for arraignment, after defendant asked for legal counsel. Those notes are apparently of statements made by

5

defendant during the custodial interrogation at the police station, and reiterated in the car on the way to Concord. The government's explanation for taking notes while driving a car but not at the police station – a mere interviewing technique – seems odd. One might expect notes of criminal admissions to have been made at the station – after confession but before the drive – or at the courthouse after arrival. If the defendant made statements at the police station, and reiterated them in the car, there would seem to be no urgency compelling note-taking while driving. But, if the first incriminating statements were made in the car, then perhaps some urgency to record the statements might be in play. In any event, defendant had invoked his right to counsel before the drive to Concord, and further interrogation absent counsel was impermissible. See Edwards v. Arizona, supra.

Of course, the videotape of the custodial interrogation procedure would conclusively resolve all doubt as to the facts, (i.e., whether defendant waived his rights, made statements, agreed to cooperate, or invoked his right to counsel). But, it is not available. Somersworth Police Captain Krutchfield

6

testified that he thought the taping equipment might have been inoperable when defendant was interrogated, or that the tape had already been recorded over prior to the hearing on January 28. (The same tape is apparently used continuously and is recorded over about every 30 days or so.) But defense counsel pursued the matter after the hearing and reports, without dispute by the prosecution, that defendant's interrogation was indeed taped, but that the tape was recorded over or erased in the usual course, on December 26, 1999.

That fact is significant for a few reasons. First, government counsel was aware that DEA agents claimed to have obtained incriminating statements from defendant as early as November 11, 1999, when counsel informed the Magistrate Judge at defendant's detention hearing that defendant had made inculpatory statements. Second, in violation of Fed. R. Crim. P. 16(a)(1)(A) and LCrR 16.1(a)(1), the prosecutor did not disclose either the substance of those alleged oral statements, or the DEA's written report referencing the alleged statements, within fourteen (14) days after arraignment. Indeed, on November 17, 1999, the

7

prosecutor advised defendant's counsel, by letter, that "[t]he government is not aware of any statement made by your client to persons known to your client to be law enforcement officers."

The explanation for that mistake and failure to disclose is certainly reasonable – the prosecutor forgot about the DEA agent's passing remark and his own bail hearing statements, no doubt expecting to later send a routine disclosure letter based upon the investigative case file. But, the case file provided to the prosecutor by the DEA omitted (through administrative error) Agent Houle's report, which made reference to defendant's alleged admissions. When Agent Houle informed the prosecutor, in early January of this year, that he found it surprising that defendant was going to trial in light of his prior confession, the prosecutor expeditiously tracked down the report and sent it to defense counsel. But that was too little and too late.

The dispositive interrogation videotape had already been erased or recorded over. Defense counsel persuasively argues that had timely disclosure been made, as required by the rules of procedure and our local rules, he would have had ample

opportunity to investigate the matter and would likely have obtained the videotape long before it was destroyed. And, the government probably would have obtained it as well, since the prosecutor likely would have asked the DEA for corroborating evidence to help establish a Miranda waiver had he seen the agent's report in a timely fashion but saw no written statement, no written waiver, no signed statement, no contemporaneous notes, and was informed that what notes existed were taken later while driving defendant to Concord.

The prejudice to defendant is apparent and presumed. Responsibility for the loss of the video, and its dispositive evidentiary character, is squarely on the government, due to its failure to comply with the applicable rules of procedure. Given that failure, as well as the absence of reasonable justification for it, the ambiguous nature, taken as a whole, of the evidence of defendant's waiver of his Miranda rights, credible evidence that defendant invoked his right to counsel in the booking room where he was being interrogated, and the presumptive prejudice to defendant occasioned by the loss of potentially critical evidence

9

regarding whether he waived or invoked his rights, or made inculpatory statements, his motion ought to be and is hereby granted.  Defendant was deprived of the opportunity to investigate the circumstances of his alleged waiver and the opportunity to effectively present evidence of particular relevance to the government's claim of express waiver.  See, e.g., United States v. Lanoue, 71 F.3d 966, 979 (1st Cir. 1995); United States v. Hemmer, et al., 729 F.2d 10 (1st Cir. 1984).

## Conclusion

Having failed to comply with the applicable rules of procedure, to the prejudice of defendant, evidence of alleged oral statements made by defendant to Agent Houle or other DEA agents during his initial interrogation, or thereafter while being transported to Concord, shall not be admitted at defendant's trial in the government's case-in-chief.  Fed. R. Cr. P. 16(d)(2).  In addition, because I also find that the government has not met its burden to establish, by a preponderance of the evidence, a knowing, intelligent, and

voluntary waiver by defendant of his <u>Miranda</u> rights, before initiating a custodial interrogation, and that plaintiff invoked his right to counsel at some point, certainly before any statements were made during the drive to Concord, and perhaps before any interrogation at all.  Therefore, statements made by defendant during his custodial interrogation, if any, are inadmissible in the government's case-in-chief.


     **SO ORDERED.**


                             _____
                             Steven J. McAuliffe
                             United States District Judge

February 11, 2000

cc:  Jeffrey S. Downing, Esq.
     Stephen A. White, Esq.
     Harry N. Starbranch, Jr., Esq.
     Rudolph F. Miller, Esq.
     Jonathan R. Saxe, Esq.